Good morning, Judge Bersin, Judge Fischer, and Judge Snow. My name is Fred Wang, and I'm the attorney for the petitioner. Your Honor, I'm here to argue four issues, primarily dealing with two, with the conduct of the immigration judge, Judge Anaholt, and also the credibility finding and the frivolous finding. First off, Your Honor, the conduct of Judge Anaholt, the immigration judge, prejudiced her decision by prejudging the merits of the petitioner's claim for asylum based on her practice as a Falun Gong member. As the Court is well aware through the briefs, the Falun Gong has been persecuted by the Chinese government. The practitioners are arrested, jailed, tortured, and even killed. In this respect, when an I.J. improperly prejudges a petitioner's case, the I.J. has violated the petitioner's due process rights to a full and fair hearing. I'm going to back up a minute here. Your Honor? You've given us a brief, and then you've given us the brief from the earlier case. And I'm a little, it's at least unorthodox. I haven't seen it before. We have a Ninth Circuit rule that seems to preclude it. What is your understanding about why this is an appropriate way to proceed? The brief that was submitted to the Ninth Circuit? You submitted a brief now, but you didn't brief the whole case in your brief now. Instead, you attached your earlier brief. Well, we had first been to the Ninth Circuit at one point, went back to the Board of Immigration Appeals, and came back to the Ninth Circuit, Your Honor. I understand that. So is your position, are you attaching the earlier brief as part of your present brief? Are you saying that the whole case is still here, the old one and the new one, or what? Essentially, the issues haven't changed. Because when I went back to the Board of Immigration Appeals, the Immigration Appeals reaffirmed their prior decision and said then we have to appeal the same matter back to the court. Okay. Your Honor, the judge a whole had already prejudged. The transcript clearly shows that in her statements in the court, you can have her describe, but I'm not going to have her stand in front of me and do exercises, which in the court's mind is what Falun Gong is all about. It's all about exercises, is what she says. There's no evidence that your client was ever arrested, detained, tortured, or beaten for practicing Falun Gong. Her uncle was, but that's no evidence that she was. So even if she was practicing Falun Gong, so what? So I don't know why all of a sudden people think that if they apply and say they're a Falun Gong member, that makes them think they can get asylum. Mr. Leo, the prior attorney, said, so you believe that my client is a Falun Gong member? She said, even if she was, so what? The judge, the point is, according to the judge, what is her fear of the Falun Gong? I don't see anything in anything other than the fact that her uncle says the police are looking for her. That's all. I don't know if there's anything else. That's not enough, but you may ask her about that. These statements clearly occurred within the first few minutes of the interview or the hearing. The second, Judge Ho took the role of the prosecutor. And how did she do that? An IJ should not demonstrate a predisposition to discredit testimony, but rather should consider unbiasedly the credibility of the witness according to case law. Transcript, January 23, 2001, seven questions in sequence about going to the uncle's house. Six questions in sequence about her uncle's arrest. Misquoted and misconstrued. Thirty-three questions in sequence. Eighteen questions in sequence. The records, Judge Leo, definitely I will be tortured by them. That result was that she actually had no evidence that she had ever been persecuted herself, right? That is correct, but that's not the standard of asylum. It's being a member of a group that is being persecuted. In this case, Ninth Circuit in Jiang versus Ashcroft said, you know, the Falun Gong is perceived to be a threat to the Chinese government for their political opinions. But she wasn't trying to prove past persecution. She was proving a well-founded fear of future persecution. Right. That's why she fled China. Okay. And, Your Honor, in the transcript of January 31, the continued hearing, ten questions. I would appreciate it if you focused on the frivolousness claim. Okay. Definitely. The frivolous claim requires in Ray Y.L. that the court comply with four standards to be met. The first is that the court gives notice that the court is contemplating a frivolous claim. Secondly, the court identified the frivolous issues which she believes are fabricated. Third, the court substantiates her basis for finding that they're frivolous. And fourth, she provides the opportunity to the petitioner to address those issues with evidence or testimony. The record is clear that up to page 167, the last day of testimony, that that is when Judge Ho stated to Mr. Liu, the attorney at that time, look, I'm going to find it frivolous, but I'll take a recess. You can go out and talk to the trial attorney and see what you can do about this case. The Board of Immigration Appeals said that was sufficient enough to give the petitioner time to go and talk about this matter, about frivolousness. However, when they came back on the record, no mention or discussion of frivolousness was made at that point in time to say, Ms. Petitioner, what is your response to the frivolous issue? Well, she couldn't because Judge Ho never identified which issues were frivolous or fabricated. She did in her opinion, but she didn't say before. No, she did it for credibility. Credibility and frivolousness. Her opinion has a specific section on frivolousness, but the question is did she do it at the hearing? Right. And so she did not say the basis for the frivolous findings, and she did not say, yes, what is your response to these allegations that I'm basing my frivolous findings on? Nothing of the record in why, Your Honor. But she was asked, wasn't she, with regard to each of those at the time of the, during the hearing, what her explanation was. What was your explanation for why you told the asylum officer that you were coming to work, and what was your explanation for why the dates didn't match, and what was your explanation for why your uncle didn't mention that you were going out, that you were going with him to practice filing? Do you want me to address those? Well, but, yes, sure, go ahead. Well, the dates, now, this is corroboration. No, I'm not asking you that. I'm asking you whether she was asked, whether she was specifically given a chance to explain those discrepancies. No, not for, for the credibility issue is separate from the frivolous issue. You can make credibility findings based on her testimony, but then when you get to the issue of frivolousness, you have to identify which issue. You cannot use both of them. So you're saying that Y.L. requires that, and you may be right, but that Y.L. requires a second go-around in which the judge says, why shouldn't I find this frivolous because of, because of this discrepancy? Right, because of the benefits that accrue to the petitioner that can't be just swept under, and she can have nobody else. Well, we understand that. Okay. Okay, but let's go back to the record. ER 312, Immigration Judge Ho says, I'm going to issue a written decision making a frivolous finding. I may or may not be, but it's my belief that she has filed a frivolous asylum application because either she lied or her uncle submitted a false letter to corroborate her claim. Now, that comes out after a whole interchange during the hearing pursuing those issues. What more does she need? Does the attorney need to figure out what it is to show why she didn't lie or why her uncle? She explained all of it. She came up with these discrepancies. What more notice would you have needed or the attorney needed? You can look at it both ways, Your Honor. She did explain about what she thought was a lie. It was the letter. The discrepancy was 23 days. The years were the same. The months were the same. That wasn't the problem. The problem was the whole rest of her story depended on her date. Well, not really. The rest of her story was that they came to arrest her on September 10th and after her uncle was arrested and after he apparently had given her name and that she left at a certain time. In other words, her whole tale depended on the rest of her story and its timing depended on that date. Well, if you look at the ñ in this day and age with Internet, telephones, cell phones and whatnot, e-mail, she could have contacted her uncle and said, we're going to use this date here. Isn't it more truthful that when we show that there are two dates that are different by a few days in the same month and the same year and the uncle is characterized as being an older man, that there haven't been any conclusions? That's not the disturbing part. The most disturbing thing is probably what she said to the original asylum at the airport about why she was coming to the country. She did explain that. Well, okay, we're not going to ñ okay, you're over time. I'm going to give you a minute on rebuttal, but we've got your brief on this issue. Thank you. Good morning, Your Honors. Good morning. Jonathan Robbins here on behalf of Eric Holder, the respondent. There's a number of issues in this case. There's the issue of adverse credibility finding and the frivolousness finding. And then, again, there's also this issue that the petitioner has raised with respect to the immigration judge's conduct. Is there a particular one you'd like me to start with? Start with that because ñ Okay, well, first, with respect to this issue of the immigration judge's conduct, they haven't actually raised that in their opening brief. I didn't think so. I'm sorry, what? I didn't think so. Yeah. As Judge Berzon alluded to, he attached a brief from a previous case which raised these issues, but, again, under this court's rule on 28-1B, they're not allowed to do that. It has to be raised in the opening brief, so that issue is waived. Even if it weren't waived, however, when you look at the context in which the quote that he's taken the immigration judge, what was happening was that the petitioner's counsel was questioning him about the specific practice of following Gong, and he was having him do these movements. And the immigration judge was saying, well, what does this have to do with anything? He was looking for ñ he never claimed that he was arrested, detained, tortured, anything like that. And then their attorney said, well, he was threatened, and the immigration judge said, well, let's go to that. Because what he was essentially doing was saying, enough with these poses and practices, let's get down to the ñ But, in fact, Judge Ho did say pretty early on that this whole following Gong thing didn't matter because it wasn't a protected ground period at the end and it doesn't matter. Well, actually, if you look, when the case was continued, after the ñ at the second day of merits hearing, the immigration judge actually sort of backed up from that and said, I'm going to actually introduce evidence of following Gong background here, and if you want to reopen, if you want to go back to what you were doing before with regard to the following Gong practices, we can go ahead and do that. That's actually part of the record after the fact. And at the end of the day, when you look at the immigration judge's decision, it's clear that she's ñ at least is making her decision on the basis that following Gong could potentially be a basis for asylum. So ñ and at the end of the day, that's what really matters, is what was her decision based on. So ñ now, with respect to the actual frivolousness claims and adverse credibility claims, they're sort of intermingled because they both rely on many of the same inconsistencies in the record. There's a plethora of inconsistencies, but I think probably, as Your Honors alluded to, the most telling are the inconsistencies between the interview at the airport with the inspection officer and her subsequent claim. But I gather a frivolousness finding is different from a lack of credibility finding. It must be, or else everybody would be ñ It is. Okay. And the case on which the remand was based has a set of requirements with regard to that. So the question is, how were they met? As I understand what happened here, frivolousness wasn't mentioned anywhere along the way until the very end, at which point the judge didn't say, you know, I am ñ I am considering making a frivolousness finding and I'd like to hear what you say about it. She said, I am going to make a frivolous finding. Actually, what she said was, if you'd like to meet with the DHS attorney and come back to me, she actually gave Petitioner an opportunity to come back and add to any ñ If the INS wishes to dispose of this case without a frivolous finding, then I may reconsider it. But not, I'm going to let you put on ñ I'm going to tell you why I'm thinking of a frivolousness finding and I'm going to tell you ñ and let you provide explanation. She never did that. So isn't that just a flat violation of YL? No. What YL requires is that Petitioner be given an opportunity to explain inconsistencies that will end up forming the basis for a frivolous finding. But she was given frivolous warnings at the beginning prior to any ñ prior to any testimony being given and the consequences of filing a frivolous application. And as Your Honors mentioned, during the course of proceedings, she was given an opportunity to respond to the various inconsistencies that ultimately served as the basis for the frivolousness finding. There's no requirement that the immigration judge say at the beginning before all the testimonies given that I'm going to make a frivolous finding. I mean, there's no ñ it's not feasible to do that. How is he going to know that there's a frivolous finding until after the testimony is given? But certainly, Petitioner was given ample opportunity to respond to all inconsistencies. There was persistent questioning on all the different inconsistencies. And again, as Your Honor alluded to at the end, the immigration judge at the end said, look, I'm going to make a frivolous finding here. You attorneys can talk it over. But certainly when they came back, they could have had an opportunity further to address the inconsistencies in the record. Just because there's overlap with inconsistencies in the frivolous finding and the adverse credibility determination doesn't mean you have to go re-question the Petitioner a second time the exact same question and get the same inconsistent answer. But this is why I asked you at the outset whether there's a difference in standard between credibility and frivolousness. If frivolousness requires a knowing and an intentional fabrication, then presumably explaining why something is true despite a discrepancy is not the same as explaining why this wasn't a knowing and intentional fabrication. Well, take, for example, one of the major inconsistencies. For example, at the airport interview, the Petitioner didn't make any mention of persecution on account of Falun Gong, despite being specifically advised that she should inform the inspection officer of any fear of persecution in China. And during the course of proceedings, she was asked why she didn't mention that, and her explanation wasn't sufficient for the immigration judge to determine that he determined that she didn't adequately explain why she failed to do that. Now, I mean, I'm not exactly sure why the Court would think that that wouldn't be a sufficient basis for a frivolousness finding or why that wouldn't be an adequate opportunity to explain the differentiation between her... Well, frankly, I have a hard time understanding why if you find somebody is not credible, you're finding they're lying. If you're finding they're lying, then I don't know why you're not finding they're frivolous. But that's not the concept that underlies the statute. Well... So there is a difference between lying and being and filing a frivolous application, apparently. Right, a deliberate fabrication. And, again, the immigration judge specifically addressed this. But isn't a lie by definition a deliberate fabrication? That's what I'm having a problem with. I'm sorry. Isn't a lie a deliberate fabrication? It would be. I guess there's, I think, maybe the knowing element of the deliberate fabrication. I agree. It's a little bit muddled. I think that's why it's a little confusing. He told her before she went out, I think, your line or your uncle's line. Exactly. Okay, so I guess maybe what she was saying, you can come back in, recant. You can come in, explain why I shouldn't find you lying. But she did put knowing element into the charge at the end, if that was adequate notice. She did, Your Honor. And I guess what I'm a little confused is what more could the immigration judge have done? You've got the frivolous warnings prior to any hearings. You've got the opportunity to explain all the different inconsistencies. You've got the warning at the end where they had an opportunity to come back and say that we have something to add on these inconsistencies or anything of that nature. The notion that an immigration judge has to go through all the evidence again on a frivolous finding that's already been gone through, it seems. Well, I think the distinction is that she was essentially saying, I gave you my best shot, I am telling the truth, and the I.J. can say, well, I'm not persuaded, therefore I don't find you credible. Then the question becomes, does the I.J.'s decision that she doesn't find you credible mean that necessarily she was lying? In other words, the person can have a disagreement and make a statement that she thinks is absolutely the fact and may be telling the truth in her own mind, so she has nothing to recant. It's like people who say, I'm innocent, the jury finds them guilty, and the person disputes to his dying day that he was innocent. Guess what? Some people actually turn out to be innocent, even though a jury of 12 found them to be, in effect, lying or not believable. So I think that's the difficult distinction at work here as to how blatant was the statement. Well, there were some pretty blatant inconsistencies in this case, Your Honor. I found the dates a little wobbly because dates weren't that extravagant, but I understand a lot of her whole rationale dependent on the dates. I think the airport one is difficult. Certainly the airport one where she admits that she came to the United States to look for work rather than making any mention of following gone practice. The dates really, I mean, if you read the record, you can see how a false claim really becomes unraveled under questioning. What's really disturbing to me is that this record doesn't look a whole lot different than lots of other records in which people were found not credible and denied asylum. And then we have the, but this judge made a frivolous misfinding. Yes. And there just seems to be incredible discretion according to individual IJs to come up with a straconian determination on basically identical records. I see I'm out of time. You can answer that question. Well, I mean, I think certainly when you're before a judge, there's always going to be some amount of discretion, but whether or not their findings are based upon the actual requirements. Yes, is it possible that an immigration judge may have not wanted to go so far as to make a frivolous finding? We don't see them. We rarely see them. All right. We'll have to reflect on that. Okay. Thank you very much for your time, Your Honor. Thank you. Real quickly, Your Honor, credibility does not mean you're lying if there's none credible. It's just that there's not enough evidence to support the testimony. That's right. So she went on and found it was more than not credible, it was a lie. And then, well, she did, but here's what she said to him at the airport. At the subsequent hearing with the asylum officer, she said, after she contacted her relatives and obtained counsel, then she said she wanted asylum. Well, the truth was she was locked up for six days. She didn't speak English. She didn't have a phone card. She couldn't call any counsel. She didn't have any counsel. She didn't have any relatives. So that conjecture there is what swayed her on the airport thing. And the other thing is the petitioner said, when I was sitting there talking to this person at the airport, this Chinese man who was speaking in Mandarin was picked up, taken out the door to the runway, and to me, he was being deported. I didn't say anything about asylum. The other thing, Your Honor, is that the judge at Birdstown is correct. Number two standard, a specific finding by the immigration judge or the board that the alien knowingly filed frivolous application. Now, if you were to not use this standard, anything she said in that 167-page transcript could be used against her for frivolousness, and the petitioner wouldn't know which one to address. Now, this thing about the recess, that is a red herring. The judge never said, go out there, talk to the prosecutor about this frivolous issue, and I'll tell you what they are, and then you can come back and address them. She said, go talk to the prosecutor. We have the transcript. We can read that. Okay. Thank you. Thank you both. Okay. The case argued is submitted.
judges: Snow, Fisher, Berzon